IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JEFFREY BRIDWELL, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:12-CV-01011-AGF |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se amended petition[1] of Missouri state prisoner Jeffrey Bridwell for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury of five counts of statutory sodomy, one count of attempted statutory rape, and one count of child molestation. He was sentenced to life imprisonment for each of the five statutory sodomy counts and the attempted statutory rape count, and to 15 years' imprisonment for the child molestation count, with the sentences running concurrently.

In his amended petition for habeas relief, Petitioner raises nine grounds for relief, based on alleged trial court errors and ineffective assistance of trial counsel. Respondent asserts that all but three of these claims were procedurally defaulted, and that the three

---

[1] Petitioner first filed a petition for a writ of habeas corpus on June 1, 2012 (Doc. No. 1), but this initial petition contained the unredacted name of the minor victim, in violation of the Court's Administrative Order. Therefore, the Court ordered the Clerk of Court to immediately file the initial petition under seal, and further ordered the Petitioner to file an amended petition redacting the names of all minors. (Doc. No. 3.) Petitioner filed his amended petition in accordance with the Court's Order on June 25, 2012. (Doc. No. 4.)

non-defaulted claims were reasonably adjudicated by the state court. Respondent further asserts that all of Petitioner's claims lack merit. For the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

### Trial

The evidence at trial showed the following. Petitioner and the victim's mother were involved in a romantic relationship, and Petitioner moved in with the victim's family in early 2002. During the summer of 2006, when the victim was ten years old, Petitioner engaged in various forms of sexual contact with the victim. The victim told her mother about these incidents on August 26, 2006. The victim told her mother that, on various occasions, Petitioner showed the victim pornographic movies, rubbed the victim's private area, rubbed the victim's buttocks with his penis, asked the victim to perform oral sex on him, and put strawberry-flavored lotion on the victim's vagina and licked it off. The victim's mother took the victim to see her family counselor, Melissa McFadden, who told the mother to take the victim to the police station and to make a report, which the mother immediately did.

The victim and her mother met with police officer Laura Hall on August 26, 2006. Hall interviewed the victim by herself, outside the presence of the victim's mother. The victim repeated to Hall the incidents the victim previously disclosed to her mother. The victim added that one time Petitioner tried to put his penis in her anus, but she told him that it hurt and he stopped. Hall testified that this interview was recorded, but that the audiotape was erased after 14 days, pursuant to department policy.

The police arranged for the victim to undergo a physical examination. The victim and her mother met with Dr. Kelly Ross, a pediatrician at St. Louis Children's Hospital, on August 26 and 27, 2006. Dr. Ross had two months of training in "child protection," including training in physical examination of child sexual abuse victims. Dr. Ross conducted a physical exam of the victim and found that her anal and vaginal areas appeared to be normal. Dr. Ross also conducted a forensic interview of the victim, and the victim repeated to Dr. Ross the incidents described above.

A few weeks later, on September 14, 2006, the victim was also interviewed by Beverly Tucker, a specialist at Children's Advocacy Services of Greater St. Louis. That interview was videotaped. During the videotaped interview, the victim told Tucker that she was there to talk about Petitioner, who sexually abused her. The victim repeated to Tucker the incidents described above. The victim also told Tucker that Petitioner asked her to perform oral sex on him on several occasions, and that she complied by putting her mouth on his penis one or two times. The victim stated that when she did not want to perform oral sex on Petitioner, she pretended to do so by "breathing hard" and "just doing this." As she said "just doing this," she made a hand motion simulating oral sex near her mouth. The victim then stated that Petitioner asked her to move her hand so he could see if she was actually performing oral sex on him.

At trial, the victim testified that she remembered speaking with the police and that she remembered going to the hospital, but that she did not remember why she made these visits or what she talked about during these visits. The victim also testified that she did not remember anything about the things the Petitioner did to her, and that it was not okay

3

if the prosecutor asked her about what the Petitioner did to her. The victim testified that she remembered meeting with the prosecutor and talking to the prosecutor about the Petitioner but that she would "rather not" talk about those things at trial.

The victim's mother, Hall, Tucker, and Dr. Ross all testified about their conversations with the victim, in which the victim discussed Petitioner's sexual contact with her. Dr. Ross testified that her physical examination of the victim did not reveal anything abnormal, but that even children who are repeatedly abused will frequently have normal physical examination results. Dr. Ross also testified, over objection, about "defense mechanisms" in child sexual abuse victims. Dr. Ross testified that she was trained, in her pediatrics residency program, about children that put up defense mechanisms as a way to cope with uncomfortable situations. She testified that for older children, one defense mechanism is to deny that anything occurred or to say that they do not remember what occurred. Finally, the jury viewed the videotaped interview of the victim by Tucker at Children's Advocacy Services.

Petitioner testified in his own defense and denied any sexual contact with the victim. The jury found Petitioner guilty on all counts.

**Direct Appeal**

On direct appeal, Petitioner argued that (1) the trial court abused its discretion in admitting the opinion testimony of Dr. Ross regarding defense mechanisms in children because Dr. Ross was not qualified by education or experience to offer such testimony; and (2) there was insufficient evidence to sustain his conviction for one of the counts of first degree statutory sodomy—the count alleging that Petitioner made the victim touch

4

his penis with her hands—because the state failed to prove beyond a reasonable doubt that the victim actually touched his penis with her hands.[2]

The Missouri Court of Appeals rejected both arguments. Regarding the first argument, the state court concluded that, while Dr. Ross did not explicitly explain her education or experience regarding diagnosing defense mechanisms, she was qualified to offer an opinion in this area under the state rules of evidence, based upon her pediatric training and experience in treating children who had been sexually abused. The Missouri Court of Appeals noted that the extent of Dr. Ross's training and experience went to the weight of her testimony, not its admissibility. Regarding the second argument on appeal, the state court concluded that the victim's statements and demonstrative hand gestures, particularly as seen in the videotaped interview of the victim by Tucker, constituted sufficient evidence for the jury to find that the victim actually touched Petitioner's penis with her hands while performing oral sex on him.

**State Postconviction Proceedings**

In a pro se motion for state postconviction relief, Petitioner raised the following claims: (1) his arrest, search, and seizure were warrantless and unconstitutional; (2) prosecutorial, juror, and trial court misconduct all occurred during his trial; (3) the evidence used against him fell under the "fruit of the poisonous tree" doctrine and should not have been admitted; (4) the trial court abused its discretion in allowing testimony of

---

[2] Petitioner acknowledged that the state presented sufficient evidence concerning the other four counts of first degree statutory sodomy, which alleged, respectively, that Petitioner made the victim put his penis in her mouth on two occasions, that the Petitioner licked the victim's vagina, and that the Petitioner touched the victim's vagina with his hand.

5

Petitioner's prior bad acts; (5) trial counsel was ineffective for failing to call an expert witness;[3] (6) trial counsel was ineffective for failing to impeach the testimony of the victim, her mother, and Hall, by pointing out inconsistencies in these witnesses' testimony; and (7) the trial court erred in allowing the state to present evidence and ask for a jury conviction based solely on out-of-court statements.

In an amended motion prepared with the assistance of appointed counsel, Petitioner added two claims of ineffective assistance of counsel. Petitioner claimed that: (8) trial counsel was ineffective for failing to object to the state's closing argument when, during that argument, the prosecutor improperly encouraged jurors to make up their minds before the case was submitted; and (9) trial counsel was ineffective for failing to request a mistrial after opening statements, when the prosecutor falsely suggested that the Petitioner possessed "child porn." Petitioner explicitly stated that all arguments raised in his pro se motion were incorporated by reference in his amended motion, and that these arguments were not waived.

The motion court denied Petitioner's request for an evidentiary hearing and denied his postconviction motion. The motion court found that claims 1, 2, 3, 4, and 7 were not proper grounds for postconviction relief. The motion court also denied each of the remaining ineffective assistance of counsel claims, finding for claim 5, that trial counsel's decision not to call an expert witness was presumptively a matter of trial strategy, which Petitioner provided no evidence to overcome, and in light of the overwhelming evidence

---

[3] Petitioner did not explain in his pro se postconviction motion what kind of expert he wanted trial counsel to call or about what such expert would have testified.

against Petitioner at trial, Petitioner could not prove that calling an expert witness would have changed the outcome of trial; for claim 6, that trial counsel thoroughly cross-examined the victim, her mother, and Hall, and Petitioner could not show that additional impeachment would have changed the outcome of trial; for claim 8, that any objection by trial counsel to the state's closing argument would have been denied as meritless and trial counsel's failure to object therefore did not prejudice Petitioner; and for claim 9, that trial counsel's failure to request a mistrial after the prosecutor referred to "child porn" in opening statements was not ineffective because trial counsel successfully objected to the statement, the prosecutor admitted that he misspoke and withdrew his statement, and any prejudice was minimized by the court's instruction to the jury to disregard the statement.

On appeal from the denial of postconviction relief, the Petitioner only preserved the two claims raised in his amended motion: that trial counsel was ineffective for failing to object to the state's comments during closing argument, and that trial counsel was ineffective for failing to request a mistrial based upon the state's reference to "child porn" during opening statements. Petitioner did not raise on appeal the motion court's denial of his remaining claims for postconviction relief.

The Missouri Court of Appeals affirmed the denial of postconviction relief. The state appellate court agreed with the motion court's rejection of the two preserved ineffective assistance of counsel claims, essentially for the same reasons advanced by the motion court.

**Federal Habeas Petition**

In his amended federal habeas petition, Petitioner asserts that his constitutional rights were violated in the following ways: (1) the trial court erred in admitting Dr. Ross's testimony regarding the defense mechanisms of children who have been sexually abused, because the court failed to hold a hearing regarding the reliability of the testimony, and because the state failed to provide Petitioner with adequate notice of the testimony; (2) the trial court erred in admitting Dr. Ross's testimony because Dr. Ross did not adequately disclose the facts underlying her opinion; (3) the state improperly destroyed an audio recording of the interview between Police Officer Hall and the victim; (4) the state failed to disclose records regarding the victim's treatment by family therapist, Melissa McFadden; (5) trial counsel was ineffective for not introducing at trial McFadden's treatment records; (6) trial counsel was ineffective for not investigating or obtaining the victim's school records and school counseling records to find evidence that could be used to impeach the victim; (7) trial counsel was ineffective for failing to consult with or call an expert witness in child psychiatry to testify regarding the reliability of child witnesses and to counter Dr. Ross's testimony regarding the defense mechanisms of sexually abused children; (8) there was insufficient evidence to sustain Petitioner's conviction for the first degree statutory sodomy charge alleging that the Petitioner made the victim touch his penis with her hands; and (9) due to error, Petitioner

was unable to introduce evidence regarding other individuals who were previously accused of, or charged with, similar crimes against the victim.[4]

Respondent argues that Claims 1 and 2 are not cognizable constitutional claims and that the state court reasonably adjudicated any state law evidentiary questions regarding the admissibility of Dr. Ross's testimony. Respondent also argues that Claim 8 was reasonably adjudicated by the state court. Respondent argues that the remaining claims—as well as Claims 1, 2, and 8, to the extent they rely on new grounds not raised in state court—were procedurally defaulted because Petitioner failed to raise or exhaust them in the state court proceedings. Finally, Respondent argues that all of Petitioner's claims lack merit.

In his reply, Petitioner argues that to the extent that any of his claims has been defaulted, such default should be excused because of the "ineffectiveness of appellate counsel." (Doc. No. 18 at 46.)

---

[4] The amended petition asserts that Claim 9 is based on a trial court error regarding the "[a]dmissibility of evidence . . . of commission of [a] similar crime by one or others than [sic] accused." (Doc. No. 4 at 37). However, in his reply brief, Petitioner suggests that Claim 9 also raises an ineffective assistance of counsel claim, based on trial counsel's failure to investigate and call as witnesses the victim's father and brothers, who Petitioner asserts were previously accused of similar crimes against the victim. (Doc. No. 18 at 43-46.) The Court is not required to consider this ineffective assistance of counsel claim because it was not raised in the petition. *See* Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts (stating that a petition for writ of habeas corpus "must . . . specify all the grounds for relief available to the petitioner"); *Laster v. Wilson*, No. 14-2069 SRN/HB, 2015 WL 1635450, at *2 n.2 (D. Minn. Apr. 13, 2015). Nevertheless, in the interest of fairness and judicial efficiency, the Court will construe Claim 9 as encompassing claims based both on an alleged trial error (Claim 9a) and on ineffective assistance of counsel (Claim 9b).

**DISCUSSION**

**Procedural Default of Claims Regarding Trial Errors (Claims 3, 4, and 9a)**

Under the doctrine of procedural default, a federal habeas court is barred from considering the merits of a claim not fairly presented to the state courts, absent a showing by the petitioner of cause for the default and prejudice resulting therefrom, or that he is actually innocent, such that a miscarriage of justice would result by failing to consider the claim. *E.g., Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011). Here, Petitioner's habeas claims alleging trial errors based on the state's destruction of an audio recording of the interview between Hall and the victim (Claim 3), the state's failure to disclose records of the victim's treatment by family therapist McFadden (Claim 4),[5] and the trial court's exclusion of evidence of the commission of similar crimes by persons other than Petitioner (Claim 9a), each could and should have been raised on direct appeal, and the failure to do so constituted a procedural default.

The ineffective assistance of direct appeal counsel cannot serve as cause to excuse the default, because such ineffectiveness was not raised in the state postconviction proceedings. *See Taylor v. Bowersox*, 329 F.3d 963, 971 (8th Cir. 2003); *Bland v. Pash*, No. 15-0041-CV-W-GAF-P, 2015 WL 3542816, at *3 (W.D. Mo. June 4, 2015); *see also*

---

[5] Although Petitioner, in Claim 4 of the petition, characterizes the records of the victim's treatment by McFadden as "newly discovered evidence," Petitioner does not explain this assertion. Rather, Petitioner confirms in Claim 5 that defense counsel was well aware of McFadden's treatment records at the time of trial and was ineffective for failing to introduce them. Petitioner further states in his reply brief that McFadden's treatment records were the subject of a pre-trial motion brought by the state. Therefore, Petitioner has not demonstrated that the he was unaware of the factual basis for Claim 4 in time to raise this claim on direct appeal.

*Dansby v. Hobbs*, 766 F.3d 809, 833-34 (8th Cir. 2014) (declining to extend the holding of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), that ineffective assistance of postconviction counsel could constitute cause to excuse a procedural default of a claim that trial counsel was ineffective, to a claim that direct appeal counsel was ineffective).

Petitioner also fails to show that a miscarriage of justice will result if his defaulted claims are not considered. *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (holding that a petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the miscarriage of justice exception). In sum, Claims 3, 4, and 9a will be denied as procedurally defaulted.

**Procedural Default of Ineffective Assistance of Trial Counsel Claims (Claims 5-7 and 9b)**

Petitioner's habeas claims asserting that trial counsel was ineffective for failing to introduce records of the victim's treatment by McFadden (Claim 5), for failing to investigate or obtain the victim's school counseling records (Claim 6), and for failing to investigate and call as witnesses the victim's father and brothers, who were allegedly accused of similar crimes against the victim (Claim 9b), were each procedurally defaulted in state court because Petitioner did not raise them in any state court proceeding. Petitioner's habeas claim that trial counsel was ineffective for failing to call an expert witness (Claim 7) was also procedurally defaulted in state court because, although raised in Petitioner's motion for postconviction relief (by incorporation of his pro se motion), it was not preserved on appeal from the denial of that motion.

As discussed above, the Court is barred from considering these claims unless Petitioner can show cause for the default and prejudice resulting therefrom, or actual innocence. *Murphy*, 652 F.3d at 849. Attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default of a habeas corpus claim of ineffective assistance of trial counsel. *Martinez*, 132 S. Ct. at 1315. However, this exception does not apply if the state demonstrates that the ineffective assistance of trial counsel claim is unsubstantial or non-meritorious. *Id.* at 1319. Also, for claims raised in the motion court but abandoned on appeal, ineffective assistance of postconviction appeal counsel does not constitute cause to excuse the procedural default. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).

Petitioner has not established cause to excuse his default of Claims 5, 6, and 9b; he has not asserted, for instance, that his postconviction counsel was ineffective for failing to raise these claims in his amended motion for postconviction relief. Likewise, Petitioner has not established cause to excuse his default of Claim 7, which *was* raised in his postconviction motion but was not preserved on appeal from the denial of that motion. In any event, as explained below, the Court finds that each of these ineffective assistance of counsel claims is without merit.

To prevail on a claim on ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong requires "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757

F.3d 750, 752-53 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687, 694). The second prong requires that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Tunstall v. Hopkins*, 306 F.3d 601, 606 (8th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

"When . . . the habeas claim goes to counsel's trial strategy or failure to investigate facts surrounding the crime, the petitioner must allege specific incompetence and prejudice resulting therefrom." *Parton v. Wyrick*, 614 F.2d 154, 158 (8th Cir. 1980). In particular, "[d]ecisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." *Hanes v. Dormire*, 240 F.3d 694, 698 (8th Cir. 2001) (citation omitted)

Petitioner has not alluded to the contents of the victim's family therapy or school records, or to the substance of the testimony that would have been provided by an expert witness or by the victim's father or brothers. Therefore, the Court discerns no specific prejudice resulting from the absence of this evidence. In short, Petitioner has not established a reasonable probability that the result of the trial, at which strong evidence of Petitioner's guilt was presented, would have been different had defense counsel introduced the additional records or called the additional witnesses that Petitioner references in his habeas claims. Claims 5, 6, 7, and 9b will be denied.

**Alleged Inadmissibility of Dr. Ross's Testimony (Claims 1 and 2)**

In Claims 1 and 2, Petitioner asserts that the trial court erred in admitting Dr. Ross's testimony regarding defense mechanisms in children. To the extent that these claims rely on grounds not raised in the state court, they were procedurally defaulted and this Court is barred from considering them. *See Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir. 1994) (holding that a "habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim," meaning that "the petitioner must present the same facts and legal theories to the state court that he later presents to the federal courts.").

However, the Court will consider Claims 1 and 2 to the extent that they rely on the ground raised in Petitioner's direct appeal, namely, whether Dr. Ross was qualified to offer the opinion testimony. As to that ground, the application for a writ of habeas corpus cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *Strong v. Roper*, 737

F.3d 506, 510 (8th Cir. 2013). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of that decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2010) (citation omitted).

It is not within a federal habeas court's province "to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Only when the "evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process" will the ruling justify habeas corpus relief. *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006). "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different." *Gee v. Groose*, 110 F.3d 1346, 1350 (8th Cir. 1997) (en banc); *see also Bounds v. Delo*, 151 F.3d 1116, 1119 (8th Cir. 1998).

The Missouri Court of Appeals found that Dr. Ross was qualified to offer expert testimony regarding defense mechanisms in children based upon her pediatric training and experience in treating children who had been sexually abused, and that the extent of Dr. Ross's experience and training went to the weight of her testimony, not its

15

admissibility. In so finding, the Missouri Court of Appeals did not improperly apply its evidentiary rules. *See State v. Partridge*, 122 S.W.3d 606, 609 (Mo. Ct. App. 2003) ("An expert is qualified if he has knowledge from education or experience that will aid the trier of fact. The extent of an expert's experience or training in a particular field goes to the weight, not the admissibility, of the testimony.").

Moreover even if the Court were to find that the state court erred in applying state law, such error would not be contrary to clearly established federal law. "[N]o decision of the Supreme Court 'clearly establishes' that experts (or any other witnesses) must be *right;* the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies." *Knese v. Roper*, No. 4:03CV1082 CEJ TIA, 2006 WL 2506005, at *16 (E.D. Mo. Aug. 28, 2006) (quoting *Buie v. McAdory,* 341 F.3d 623, 625 (7th Cir. 2003)). Here, Petitioner's counsel was allowed to cross-examine Dr. Ross regarding the extent of her qualifications, in order to assist the jurors in determining "where the truth lies." *Id.* Therefore, the state court's admission of this testimony was neither contrary to nor an unreasonable application of Supreme Court precedent. Claims 1 and 2 will be denied.

**Alleged Insufficiency of Evidence (Claim 8)**

In Claim 8, Petitioner asserts that his due process rights were violated because there was insufficient evidence from which the jury could have found that the victim touched Petitioner's penis with her hands, as required for the conviction of one of the counts of first degree statutory sodomy charged against Petitioner.

The Due Process Clause prohibits the conviction of an accused "except upon proof

16

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In the § 2254 setting, the federal court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Evans v. Luebbers*, 371 F.3d 438, 441 (8th Cir. 2004). The scope of habeas review of such a claim is "extremely limited." *Skillicorn v. Luebbers*, 475 F.3d 965, 977 (8th Cir. 2007). This means that when "a reviewing court [is] 'faced with a record of historical facts that supports conflicting inferences [the reviewing court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326)). This Court may grant habeas relief only if the Missouri Court of Appeals' determination that the evidence satisfied the sufficiency of evidence standard was "both incorrect and unreasonable" under *Jackson*. *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011); *see also Webb v. Steele*, No. 4:10 CV 758 RWS; 2014 WL 684006, at *13 (E.D. Mo. Feb. 21, 2014).

A person commits the crime of statutory sodomy in the first degree under Missouri law if he has "deviate sexual intercourse with another person who is less than fourteen years old." Mo. Rev. Stat. § 566.062.1. "Deviate sexual intercourse" is defined as:

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument

17

or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim

*Id.* § 566.010(1).

Here, the Missouri Court of Appeals reasonably determined that, viewing the evidence in the light most favorable to the verdict, there was sufficient evidence to support Petitioner's conviction of the count of first degree statutory sodomy charging that the victim touched Petitioner's penis with her hands. The jury saw a videotape of the victim's statement that she pretended to perform oral sex on the Petitioner by "doing this," accompanied by the victim's demonstrative hand gestures simulating oral sex near her mouth, and that the Petitioner asked her to move her hand in order to see whether she was actually performing oral sex on him. This is enough evidence for a rational jury to determine that the victim touched Petitioner's penis with her hands. The Missouri Court of Appeals did not unreasonably apply the *Jackson* standard in disposing of this claim.[6] Therefore, Claim 8 will be denied.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §

---

[6] The Missouri Court of Appeals did not actually cite *Jackson*, but it did use the appropriate legal standard in reviewing the claim. *Early v. Packer*, 537 U.S. 3, 8 (2002) (holding the state court need not cite to Supreme Court cases, or even be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them").

2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the original and amended petitions of Jeffrey Bridwell for a writ of habeas corpus are **DENIED**. (Doc. Nos. 1 & 4.)

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of September, 2015.